UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH ARTHUR KETOLA,

        Plaintiff,              Case No. 1:08-CV-31

v.                                 Honorable Richard Alan Enslen

BEN CLEARWATER, *et al.*,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The matter presently is before the Court on two motions: (1) Defendant Allegan General Hospital's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted; and (2) Defendant Michelle Condon, M.D.'s Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. For the reasons that follow, both motions are granted.

### Discussion

    I.      Factual allegations

Plaintiff Joseph Arthur Ketola presently is incarcerated with the Michigan Department of Corrections and housed at the St. Louis Correctional Facility. The actions he complains of, however, occurred immediately before and during the time he was confined at the Allegan County Jail. Plaintiff sues Michigan State Police Officers Ben Clearwater and Scott Ernstes, Allegan General Hospital Emergency Room "John and Jane Does," Allegan General Hospital, Allegan General Emergency Room Doctors Michelle Condon and James M. Lynch, and the following Allegan County

Jail staff: unknown doctor, unknown nurse "Jessica," unknown medical personnel "John Does" one through five, Nancy Nocera, Tom Taverna, Jim Miller, Koreena Bucama, Nyla Merrell, John Saxton, Bert Mancuso, Meagan Bearder, Pixie Puenta, Blaine Kopps, Kevin Dorlag, and Chuck Rewalt. (Am. Compl. at 6, Dkt. No. 23.)

On August 12, 2007, Plaintiff was involved in a domestic dispute during which he alleges he was hit in the back of the head five times with a hammer. (*Id.* at 7, ¶ 1.) An EMS unit arrived, but Plaintiff was not treated. Instead, Defendant Troopers Clearwater and Ernstes handcuffed him and left him on the floor, bleeding profusely, for an hour until a second EMS unit arrived. (*Id.* at 7, ¶¶ 2-4) The EMS unit took Plaintiff to the Allegan General Hospital emergency room, where he was handcuffed to a bed and was left untreated until five hours and forty-five minutes after his arrest. During the early morning hours of August 13, 2007, Defendant received five staples in the back of his head and two stitches in his left ear, but his wounds were left "matted and bloody, with no covering." (*Id.* at 8, ¶¶ 6-8.) Plaintiff alleges that "within minits [sic]" he was taken to the Allegan County Jail and was left on the "drunk tank floor" for two days without any treatment. Plaintiff alleges that he woke up two days later on August 15, 2007. (*Id.* at 8, ¶¶ 9-10.)

Plaintiff contends that he was not given a shower for eight days following his arrest. Plaintiff finally had his stitches and staples removed by a nurse at the Allegan County Jail more than two weeks after arriving at the jail. Plaintiff states he explained to the nurse that he was having trouble with his eyesight, lacked feeling in his hand, had a broken finger and was experiencing pain in the back of his head. He was told that it was normal and was not given any treatment. (*Id.* at 9, ¶¶ 11-12.) In September 2007, Plaintiff saw a jail physician who told Plaintiff that the "symptoms he was having was brain damage, and there was nothing he or anyone could do, here at the jail." (*Id.* at 9,

¶ 13.)  Plaintiff asked a jail nurse in November 2007 why he had been released from the hospital in August instead of being held for observation.  The nurse allegedly told him that he had been kept at the hospital for 36 hours before being released.  (*Id.* at 9-10, ¶ 14.)  The same nurse told Plaintiff that she did not know why his record did not mention the staples and stitches or why Plaintiff had no follow-up examination at the hospital.  (*Id.*)  In addition, Plaintiff asked why he had been provided no follow-up treatment, despite the pain in his head, arm and left eye and apparent nerve damage.  The nurse advised Plaintiff that there existed no aftercare for Plaintiff's condition.  (*Id.*)

Plaintiff asserts that since his injury he has had "on going problems of pain in the back of [his] head, pain in [his] hand and arm, and [his] left eye, pain at any loud [noise]" which could have been prevented in part or in whole if he had received timely treatment.  (*Id.*)  Plaintiff seeks compensatory and punitive damages.

  II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Twombly*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In their motions, both Allegan General Hospital and Dr. Condon contend that Plaintiff has failed entirely to allege that they are state actors or were otherwise acting under color of state law in rendering emergency treatment to Plaintiff on August 13, 2007. Further, Defendants both contend that Plaintiff's allegations against them fail to rise to the level of an Eighth Amendment violation.

In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

Plaintiff has not presented any allegations by which the hospital's and doctor's conduct could be fairly attributed to the State. The fact that Defendant Allegan General Hospital may receive public funding and that the hospital and doctor are licensed by the state does not render them "state actors" for purposes of § 1983. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (nonprofit, privately operated school's receipt of public funds did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (allegation that hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law); *Adams v. Vandemark*, 855 F.2d 312, 315-16 (6th Cir. 1988) (fact that nonprofit corporation was funded almost entirely by public sources, and was subject to state regulation, without more, is insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action). Further, even if Defendants treated Plaintiff at the state's request and expense, they did not thereby become state actors. *See Rendell-Baker*, 457 U.S. at 841 ("private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts"); *Bell v. Management & Training Corp.*, 112 Fed. App. 219, 223 (6th Cir. 2005) (private company operating state corrections facilities is not a state actor).

Moreover, even if both Allegan General Hospital and Dr. Condon were found to be state actors, Plaintiff fails to allege that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with

contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need [ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834); *see also Miller v. Calhoun County*, 408 F.3d 803, 812-13 (6th Cir. 2005). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *see also White v. Corr. Med. Servs., Inc.*, 94 Fed. App. 262, 264 (6th Cir. 2004); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 Fed. App. 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196

Fed. App. 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 Fed. App. 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 Fed. App. 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In the instant case, Plaintiff alleges at most that, on the single occasion they treated Plaintiff, Defendants Allegan General Hospital and Dr. Condon were negligent and that he disagrees with their treatment. Such allegations are insufficient to rise to the level of an Eighth Amendment claim. *See, e.g., Westlake*, 537 F.2d at 857 n.5; *White*, 94 Fed. App. 264; *Wright v. Sapp*, 59 Fed. App. 799, 801 (6th Cir. 2003); *c.f. Brooks v. Celest*e, 39 F.3d 125, 128 (6th Cir. 1994) (noting that single instance of medical care denied or delayed, in isolation, ordinarily is evidence of negligence).

To the extent Plaintiff raises a state-law claim of medical malpractice against these Defendants, the claim is not cognizable under § 1983. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, the Court declines to exercise supplemental jurisdiction over the state-law claims. Where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of North Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state-law claims against Defendants Allegan General Hospital and Dr. Condon will be dismissed without prejudice.

## Conclusion

For the foregoing reasons, Defendant Allegan General Hospital's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Dkt. No. 36) and Defendant Michelle

Condon, M.D.'s Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Dkt. No. 41) will be granted.  Plaintiff's Eighth Amendment claims against Defendants Allegan General Hospital and Michelle Condon, M.D. will be dismissed with prejudice.  Plaintiff's state-law malpractice claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

A Partial Judgment consistent with this Opinion shall enter.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>October 31, 2008 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |